# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

SAMER NACHAAT SALAMI,

Defendant-Appellee.

UNPUBLISHED
December 10, 2015

No. 323073
Wayne Circuit Court
LC Nos. 13-003689-FH;
13-003690-FH

Before: MURRAY, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] an order sentencing defendant, Samer Nachaat Salami, in two separate cases.

In case number 13-003689-FH, defendant pleaded *nolo contendere* to conducting a criminal enterprise, MCL 750.159i, embezzlement of more than $50,000 but less than $100,000, MCL 750.174(6), using a computer to commit a crime, MCL 752.797(3)(e), and two counts of false pretenses involving a value of $20,000 or more, MCL 750.218(5)(a).[2]

In case number 13-003690-FH, defendant pleaded *nolo contendere* to conducting a criminal enterprise, embezzlement of $100,000 or more, MCL 750.174(7), two counts of using a computer to commit a crime, and three counts of false pretenses involving a value of $20,000 or more.

---

[1] *People v Samer Nachaat Salami*, unpublished order of the Court of Appeals, entered September 30, 2014 (Docket No. 323073).

[2] We note that there is a discrepancy between the charges listed on the felony information, listed on the settlement offer and notice of acceptance, and read by the trial court at the plea hearing and the counts listed on the judgment of sentence. Without explanation in the record, the judgment of sentence appears to be missing two counts of false pretenses of $20,000 or more. Nevertheless, the record clearly shows that defendant pleaded *nolo contendere* to all of the charges.

For his convictions in both cases, the trial court sentenced defendant to five years' probation, with the first 12 months in jail. We remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Defendant's charges arise from his work as a realtor and real estate broker between 2007 and 2011, during which he served as a registered agent for Fannie Mae and Freddie Mac. While an agent, he exploited his relationship with Fannie Mae and Freddie Mac by utilizing false pretenses and other means to execute a scheme of racketeering activity based on real estate transactions, through which he embezzled thousands of dollars.

At an October 1, 2013 plea hearing, defendant entered a plea of *nolo contendere*, with no sentence agreement, to all of the charges against him. He was sentenced on February 19, 2014. At sentencing, the parties agreed that the minimum range calculated under the sentencing guidelines was 45 to 75 months' imprisonment. The prosecution ultimately requested that defendant be sentenced at the top of the minimum range and argued that an upward departure was justified because (1) defendant's actions affected approximately 150 different bona fide purchasers, (2) through defendant's actions, the government sustained a loss of over $1 million, which was insufficiently accounted for in the scoring of the sentencing guidelines, (3) even after being terminated as a listing agent by Freddie Mac, defendant continued to conduct his illegal business through a relationship with Fannie Mae, and (4) defendant flagrantly disregarded the law and impeded an ongoing investigation.

On the other hand, the defense argued that a downward departure was appropriate and that the trial court should sentence defendant to a sentence of one year in jail with five years' probation. Defendant claimed that (1) he anticipated federal charges arising out of the same conduct since the offenses were investigated by a joint state/federal task force, such that it would be most fair for defendant to face one prison term for the offenses in federal prison rather than separate terms in state and federal prison; (2) he agreed to pay more than three times the amount of restitution with which he was charged; (3) "sentencing comes down to fundamental fairness," and the federal government's delay in charging defendant in this case was fundamentally unfair; (4) he was not a physical threat to the community; (5) at the time of sentencing, he was 33 years old, had no prior criminal record, was active in the community, and no longer had his real estate license; (6) at the time of sentencing, he had been on a tether for almost a year; and (7) the majority of the transactions giving rise to his charges took place in 2008 and 2009, "when the real estate market was crashing due to deliberate, lax enforcement of buying standards" by the victims in this case, Fannie Mae and Freddie Mac, both of which were "guilty of gross mismanagement and oversight and . . . [were] bailed out by taxpayers."

Apparently persuaded by defendant's reasoning, the trial court departed from the minimum range calculated under the sentencing guidelines and sentenced defendant to 5 years' probation with the first year in the county jail. The trial court provided the following reasons for its departure: (1) defendant cooperated with the prosecution and never attempted to "dodge" his charges, (2) defendant expressed an ability and willingness to pay a significant amount of restitution at all times during the case, and (3) defendant would likely face federal charges given the federal government's involvement in the case.

-2-

With regard to the possibility of federal charges, the trial court explained that defendant's sentence would have been substantially different, and that defendant would not avoid state prison, "if there was no federal case out there." It expressly acknowledged that this case involved "repeated actions by [defendant]," that defendant "committed some very serious crimes," and that "these were calculated actions and [defendant] has to be punished." However, the trial court expressed its frustration with the federal government's tendency to delay charging defendants already involved in criminal cases brought in state court. The court noted that the federal prosecutor involved in the instant case indicated that he was not sure what the federal government was going to do with regard to defendant, and declined to charge defendant despite the state trial court's request for him to do so. The trial judge stated that he was "not going to get played by the U.S. Attorney's Office" in light of their refusal to make a decision until after the trial court sentenced defendant. The court also noted that this is the type of case that should be brought in federal court, not in state court, and expressed its belief that the state should not have to pay for defendant's incarceration if the federal government is willing to pay for it. Thus, given the federal government's delay in charging defendant and the near certainty, according to the trial court, that defendant would face federal charges, the trial court believed that it would not be fair for defendant to receive "stacked time" or face "a double sentence," and concluded that a departure sentence was necessary in this case so that the trial court could "put [the federal government's] feet to the fire, because [it was] not interested in the defendant getting stacked time."

## II. REVIEWING A DEFENDANT'S DEPARTURE SENTENCE FOR REASONABLENESS UNDER *LOCKRIDGE*

On appeal, the prosecution initially argued that the trial court abused its discretion when it departed from the sentencing guidelines because (1) it failed to justify its departure with a sufficiently substantial and compelling reason, (2) it relied on reasons that were not objective and verifiable, and (3) it failed to justify the extent of the departure or explain why a sentence of probation, with the first year in jail, was more proportionate to defendant's crimes than a prison sentence within the minimum range calculated under the sentencing guidelines. See *People v Smith*, 482 Mich 292, 299-300; 754 NW2d 284 (2008). The prosecution then filed a supplemental brief following the Michigan Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), recognizing that a trial court is no longer required to provide a substantial and compelling reason for a departure sentence, and arguing, in light of the new "reasonableness" standard of review under *Lockridge*, that defendant's sentence was procedurally and substantively unreasonable. See *Lockridge*, 498 Mich at 364-365, 391-392.

As the prosecution acknowledges on appeal, the following changes to the Michigan sentence scheme were effectuated under *Lockridge*:

> [The *Lockridge* Court] held that our sentencing scheme "violates the Sixth Amendment right to a jury trial because it requires 'judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*.' " Our Supreme Court "concluded that the appropriate remedy was to render Michigan's sentencing guidelines merely advisory." Accordingly, our Supreme Court

-3-

"sever[ed] MCL 769.34(2) to the extent that it is mandatory *and [struck] down the requirement of a 'substantial and compelling reason' to depart from the guidelines range in MCL 769.34(3)." "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness."* However, sentencing courts must "continue to consult the applicable guidelines range and take it into account when imposing a sentence." [*People v Terrell*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 321573); slip op at 6-7 (footnotes omitted; emphasis added).]

Thus, the proper inquiry in this case is whether defendant's departure sentence is reasonable. *Lockridge*, 498 Mich at 365, 392; *Terrell*, ___ Mich App at ___; slip op at 7.

In *People v Steanhouse*, ___ Mich App ___ ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 21, this Court recently recognized that *Lockridge* did not set forth a procedure for reviewing a sentence for reasonableness. Accordingly, the *Steanhouse* Court adopted the "principle of proportionality" that was previously in use pursuant to *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), "hold[ing] that a sentence that fulfills the principle of proportionality under *Milbourn* and its progeny constitutes a reasonable sentence under *Lockridge*." *Id*. at ___; slip op at 23-24. In addition, we articulated the following procedure for reviewing a defendant's departure sentence:

Given that *Lockridge* overturned the substantial and compelling reason standard, *Lockridge*, ___ Mich at ___; slip op at 29, which was in place at the time of defendant's sentencing, and given our conclusion that the principle of proportionality established under *Milbourn* and its progeny is now the appropriate standard by which a defendant's sentence should be reviewed, we also find that the procedure articulated in *Lockridge*, and modeled on that adopted in *United States v Crosby*, 397 F3d 103 (CA 2, 2005), should apply here. *Lockridge*, ___ Mich at ___; slip op at 33-36. As recently stated by this Court in *People v Stokes*, ___ Mich App ___, ___; ___NW2d ___ (2015); slip op at 11, "the purpose of a *Crosby* remand is to determine what effect *Lockridge* would have on the defendant's sentence, so that it may be determined whether any prejudice resulted from the error." While the *Lockridge* Court did not explicitly hold that the *Crosby* procedure applies under the circumstances of this case, we conclude this is the proper remedy where, as here, the trial court was unaware of and not expressly bound by a reasonableness standard rooted in the *Milbourn* principle of proportionality at the time of sentencing.

Under the *Crosby* procedure, which "offers a measure of protection to a defendant[,]" "a defendant is provided with an opportunity 'to avoid resentencing by promptly notifying the trial judge that resentencing will not be sought.' " *Stokes*, ___ Mich App at ___; slip op at 11-12, quoting *Lockridge*, ___ Mich at___; slip op at 35. Given the possibility that defendant could receive a more severe sentence, defendant should be provided the opportunity to avoid resentencing if that is his desire. *Stokes*, ___ Mich App at ___; slip op at 12. Accordingly, we remand the matter to the trial court to follow the *Crosby* procedure outlined in *Lockridge*. Defendant "may elect to forego resentencing by

-4-

providing the trial court with prompt notice of his intention to do so. If 'notification is not received in a timely manner,' the trial court shall continue with the *Crosby* remand procedure as explained in *Lockridge*." *Stoke*s, ___ Mich App at ___; slip op at 12, quoting *Lockridge*, ___ Mich at ___; slip op at 35-36. [*Steanhouse*, ___ Mich App at ___; slip op at 25.]

## III. APPLICATION

As in *Steanhouse*, the trial court in this case was neither aware of, nor expressly bound by, a reasonableness standard rooted in the *Milbourn* principle of proportionality when it decided defendant's sentence. As such, in accordance with *Steanhouse*, remand is necessary so that the trial court may implement the *Crosby* remand procedure as articulated in *Lockridge*. See *Steanhouse*, ___ Mich App at ___; slip op at 25.[3] Unlike in *Steanhouse*, however, the prosecution is the party challenging the trial court's departure from the sentencing guidelines.

Accordingly, the prosecution may elect to forgo resentencing by promptly notifying the trial court of its intent to do so. See *Steanhouse*, ___ Mich App at ___; slip op at 25; see also *Lockridge*, 498 Mich at 398. If the trial court does not receive such notice from the prosecution in a timely manner, the "court shall continue with the *Crosby* remand procedure as explained in *Lockridge*." *Steanhouse*, ___ Mich App at ___; slip op at 25 (quotation marks and citation omitted).[4]

---

[3] The prosecution requests that we remand this case for resentencing before a different judge. See *People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997). We decline this request because (1) the issue is not properly presented in the prosecution's brief on appeal, as it is not included in the statement of questions presented, see MCR 7.212(C)(5); (2) remanding to a different judge would thwart the *Crosby* remand procedure, which we must follow in accordance with *Steanhouse*, see *Steanhouse*, ___ Mich App at ___; slip op at 25; see also *Lockridge*, 498 Mich at 396-398; and (3) in reading the sentencing transcript as a whole, the judge's comments do not raise a reasonable expectation that he would experience difficulty in rejecting his previously expressed views, see *Hill*, 221 Mich App at 398. Additionally, the trial court will now have an opportunity to determine if it would sentence defendant differently now that it is bound by a reasonableness standard grounded in the *Milbourn* principle of proportionality. See *Steanhouse*, ___ Mich App at ___; slip op at 23-24.

However, it should be noted that we are very cognizant of the trial court's highly speculative reasoning, a reflection of its personal displeasure with the United States Attorney's Office, when it originally sentenced defendant in the matters before us. We caution the trial court to refrain from such speculation in the future and consider only the facts of the matter at hand when sentencing.

[4] We are required to follow *Steanhouse*. Unlike the reasonableness standard articulated in 18 USC 3553(a), which applies to the federal sentencing guidelines, and which the federal courts could fall back on after the United States Supreme Court's decision in *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005), there is not a similar state statute that

## IV.  CONCLUSION

For these reasons, we remand this case for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Michael J. Riordan

defines "reasonableness" with regard to Michigan's sentencing guidelines.  It is the Legislature's responsibility to promulgate such a statute; it is not in the province of this Court to do so.